# CONSULTING PROJECT

## PRE-SENTENCE MEMORANDUM

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

THE UNITED STATES OF AMERICA

-against-

JOSEPH MICHAEL PESSERILLO
Docket No. 113C 0:24CR60187

HONORABLE JUDGE WILLIAM DIMITROULEAS

Andrew Peenebaker
Assistant United States Attorney

Respectfully submitted.

Mandi Budah, MA, LCSW
Forensic Social Work Consultant

Reynaldo Cusicanqui, B.A.
Forensic Mitigation Specialist
CONSULTING PROJECT

Bryan Stewart Adeline, Esq.
2770 N. University Drive
Coral Springs, Florida 33065

Michael Sheinberg, Esq.
50 Court Street, 702
Brooklyn, New York 11201
DEFENSE COUNSEL

March 24, 2025

## CONTENTS

INTRODUCTION..............................................................................................................Pg. 3

BIOPSYCHOSOCIAL HISTORY...................................................................................Pg. 6

PHYSICAL HEALTH AND MEDICAL HISTORY.......................................................Pg. 9

ALCOHOL AND SUBSTANCE USE HISTORY..........................................................Pg. 10

MENTAL HEALTH HISTORY......................................................................................Pg. 10

LEGAL HISTORY..........................................................................................................Pg. 10

COLLATERAL INTERVIEW WITH NATALIE SCOTT.............................................Pg. 11

COLLATERAL INTERVIEW WITH MARY PESSERILLO.......................................Pg. 12

ASSESSMENT OF CHARACTER.................................................................................Pg. 15

CLINICAL ASSESSMENT............................................................................................Pg. 16

POST CONVICTION RISK ASSESSMENT.................................................................Pg. 18

SENTENCING RECOMMENDATIONS.......................................................................Pg. 22

Exhibits:
1. Massey Services Inc. Certificates of Achievement for Exceeding Sales Standards
   a. March, May, July, August, September, and October 2024
   b. March, May, June, July, August, and September 2023
   c. May, June, July 2022
2. Massey Services Inc. Certificate for Completing Basic Sales Training March 2022
3. Massey Services Inc. Certificate for Completing Residential Sales Initial Training March 2022
4. Character Reference Letters
   a. Mary and Michael Pesserillo- Parents
   b. Robin Laxton – Sister
   c. Herb Laxton – Brother-in-law
   d. Natalie Scott – Fiancé
   e. Edward and Vivian Smith – Aunt and uncle
   f. Guy Valerioti – Family friend
   g. Mimi Fuller – Massey Customer
5. Closing disclosure of rental property – closing date August 12, 2020
6. Closing disclosure of primary property - closing date September 21, 2023
7. Proof of mortgage payments
8. 2023 U.S. Individual Income Tax Return

## INTRODUCTION

This pre-sentence memorandum has been prepared by the Consulting Project, a private mitigation and forensic social work firm that assists defense attorneys with evaluations of individual clients and cases with a view toward presenting alternative pleas and sentencing possibilities to the Court and the United States Attorney's Office. This memorandum is submitted by Reynaldo Cusicanqui and Mandi Budah, MA, LCSW on behalf of Joseph Pesserillo at the request of his attorneys, Michael Sheinberg and Bryan Stewart Adeline.

Mr. Cusicanqui has worked as a Forensic Mitigation Specialist and Sentencing Advocate since 1995. Due to his lengthy experience, he has knowledge of psychosocial contributors and extensive knowledge of criminal behavior derived from evaluating thousands of defendants in the state and federal court systems. He has also gained most of his forensic experience in mitigation from being appointed as a Senior Mitigation Specialist on numerous death penalty eligible matters in the United States District Court for the Southern and Eastern Districts of New York.

I, Mandi Budah, have worked as a Licensed Clinical Social Worker since 2012 and additionally possess a master's degree in forensic psychology, obtained in 2010. A degree in forensic psychology specializes in the application of clinical skills including assessment, treatment, and evaluation to forensic settings. Following psychological assessment of an offender, I am able to apply tools, research and ideas from psychology to legal situations and to help answer legal questions. With a forensic psychology background, I am able to provide psychological expertise and research to help legal professionals and proceedings better understand human behavior and the effects of trauma or other life events. With my knowledge of psychosocial contributors and comprehensive knowledge of criminal behavior obtained from working with the Consulting Project, I conduct evaluations, prepare Pre-pleading and Pre-

sentence reports for the court, and recommend necessary sentencing alternatives on criminal matters. It is our specialty to provide the greatest amount of psychosocial background to the decision-making parties. This ultimately allows us to enhance the appropriate classification of a defendant that is a risk to the community or a defendant that is deserving of a just and appropriate disposition.

The information in this memorandum is based on in-depth video and telephone interviews with Mr. Pesserillo, as well as additional collateral interviews conducted with his fiancé, Natalie Scott and mother, Mary Pesserillo. During his clinical assessment, he was found to be forthcoming of any applicable information that may assist in his case for leniency. Mr. Pesserillo reported he is currently in unfamiliar territory and is especially interested in cooperating with his legal team in the present matter. He has no prior criminal history which suggests this offense may be an isolated incident rather than indicative of a broader pattern of criminal behavior. Additionally, his supportive family background and stable upbringing have laid the foundation for positive development and decision-making, as well as strong family values, including loyalty. There is no indication of mental health or substance use issues, which further reduces concerns about any underlying psychological or addiction-related factors influencing his actions. Based on the available information, Mr. Pesserillo does not present any notable psychological or behavioral conditions that would suggest underlying factors contributing to his offense. His past history reflects a stable and functional lifestyle, with no significant concerns regarding his mental health or social background, further supporting the view that his offense may be an aberration rather than a symptom of deeper, ongoing issues.

In presenting this report, we wish to highlight certain mitigating factors that we believe deserve consideration for leniency and respectfully recommend a sentence that is no greater than

4

necessary. This memorandum will elucidate this determination and highlight in detail other mitigating factors we believe deserve consideration for leniency.

The main psychosocial mitigating factors we have identified are as follows:

- Mr. Pesserillo has no prior criminal history.

- Mr. Pesserillo was raised in a supportive, loving home with strong family values, positive social and emotional development, and lacking all instances of trauma, adversity, or abuse.

- There is no history of substance use or mental illness.

- He is devoted to his immediate family and has positive relationships with his fiancé and her daughter.

- Mr. Pesserillo remains employable, has excelled at Massey Services for the past three years, and demonstrates motivation to lead a productive, law-abiding life.

- There is a willingness to comply with all aspects of a proposed treatment plan.

- Letters appended herein depict an individual that has exemplary work ethic and commitment to his family and community.

- Based on our collateral interviews with Mr. Pesserillo and his family, it does not appear that he has amassed any self-serving financial gain from his criminal activities.

- Should Mr. Pesserillo face a period of incarceration, his family would experience a decline in psychological and economic stability. He is a significant financial contributor to his home and an integral part of his parents' care and social and emotional well-being.

## BIOPSYCHOSOCIAL HISTORY

Mr. Joseph Michael Pesserillo was born without complication at Mather Hospital on August 14, 1986, to the marital union of Mary (69) and Michael (78) Pesserillo, both of whom are retired from banking and business machine and equipment sales and ownership, respectively. He has one sister, Robin Laxton (52), who is a teacher and is employed by Target and resides in Mooresville, North Carolina. He has a fiancé, Natalie Scott (32), who he has been in a relationship with for three years. She is employed by Massey Services Inc., the same company where Mr. Pesserillo works. Ms. Scott has a 10-year-old daughter, Isabella Scott, who he is raising as his own. Ms. Scott rents her own residence that will soon be sold, and she, Mr. Pesserillo, and Isabella together reside at 2494 Bingham Street, Middleton, Florida, the home he purchased on September 21, 2023.

Mr. Pesserillo reported an uncharacteristic childhood, growing up in South Setauket, New York, in a home with both of his parents. His mother worked as a branch manager for Chase and his father owned his own company dealing with business machines and equipment. He described a formal and traditional childhood, attending school, doing homework and riding his bike after school hours, spending free time with friends and family and spending free time and weekends with his cousins. He reported his mother remained in the home for the first few years of his childhood but returned to work when he was around 10 years of age. He remembered being independent as a child, coming home from school before his parents arrived home from work. As a child, he enjoyed playing football and baseball and recalled only positive memories. He expressed that both his parents were loving and supportive and instilled strong family values, including loyalty to family, in him as a child, something that he has taken with him through his adult life. He denied all incidents of abuse, including verbal, physical, emotional, and sexual. He

reported strong relationships with both his parents growing up, something that continues to the present day. He additionally reported strong relationships with his cousins, who were like brothers to him growing up, spending after school hours, weekends, vacations, and holidays together.

Mr. Pesserillo attended Boile Road Elementary school and reported an unremarkable experience. He reported always maintaining friendships and denied all academic and behavioral challenges. He attended John F. Kennedy Middle School, where he additionally recalled an average experience of academic and social involvement with peers, again denying any behavioral challenges. He attended Comsewogue High School where he admitted to variable grades, noting that he was eager to graduate so that he could begin to work. He denied significant academic concern and denied any behavioral difficulties. Mr. Pesserillo graduated in 2004 and attended Suffolk Community College where he obtained his associate's degree in liberal studies. He continued his education at SUNY Albany where he graduated with a bachelor's degree in psychology in 2008. While in college, Mr. Pesserillo benefited from the support and camaraderie of a close-knit group of friends, including his cousins, that remain in his life today. He enjoyed social activities while on campus and did not participate in clubs or sports.

Between 2008 and 2012, Mr. Pesserillo worked on a delivery route in addition to holding employment with a Sprint independent dealer. During a period of unemployment, he relocated to Florida in 2012, where he resided with his parents before relocating to South Florida after his mother encouraged him to begin working with his cousin, who had his own business. Due to Mr. Pesserillo's history of closeness to his family, he quickly reconnected with his cousin Jason Smith, forming a bond and friendship that extended beyond being cousins. Mr. Pesserillo worked at Proven Rx Sales from 2014 through 2021. Mr. Pesserillo expressed that his cousin was the

owner of Proven, a purported pharmaceutical consulting company. Proven helped small- to mid-size distributors sell commonly abused prescription drugs to Houston area pill-mill pharmacies. Mr. Pesserillo was a sales representative who dealt directly with customers on Mr. Smith's behalf, usually by phone and email. He admitted over the years at times feeling apprehensive and wanting to leave the company to pursue his own endeavors, but always remembered his strong family values, including loyalty, which influenced him to remain working for his cousin (additional details as reported by his mother are found in subsequent sections of this report). He expressed he trusted his cousin every step of the way, rarely asking questions and obliging by his work responsibilities and roles.

While residing in South Florida, Mr. Pesserillo reported he purchased a condominium, enjoyed spending his free time at home, and spent many hours in the gym working on his physical fitness and overall health. He maintained friendships but preferred to be home and described himself as "living a low-key life."

In 2021, after leaving Proven, Mr. Pesserillo moved from South Florida to the Villages, Florida, to be closer to his parents, who are getting older, and who are no longer in the best health. He reported that his father is in ailing health, had prostate cancer, a knee replacement, and has a metal rod in his leg due to being mugged while on vacation. Mr. Pesserillo was able to take his parents to medical appointments, help with daily tasks around the home, help prepare meals, and help encourage his father to increase his mobility.

In March 2022, Mr. Pesserillo obtained a new job at Massey Services Inc., a pest and mosquito control, termite treatment and control, irrigation and sprinkler repair, lawn care and landscape service company where he is employed in the sales department. His main responsibility is to protect customers' properties, and he is responsible for approximately 20,000

8

customers. He has excelled in the Villages region, achieving many awards and accolades for his service and sales; he is the number one sales agent in all the Villages. While in training, he met his fiancé, Natalie, who he has been in a relationship with since. The pair were "on and off" for the first year and have been in a strong committed relationship for the past one and a half years. Mr. Pesserillo proposed December 24, 2024, surrounded by his family, and has placed wedding plans on hold. His fiancé has a daughter, Isabella, who Mr. Pesserillo has been raising as his own. He has developed a strong relationship with her that began as a friendship and has seamlessly transitioned into a father-daughter relationship based on trust, support, guidance, and respect.

In 2023, Mr. Pesserillo left his parents' home and purchased his own home in the family section of the Villages. He additionally maintains a rental unit in the community which he purchased in August 2020. He described himself as a simple man, who has never been in trouble with the law, who spends his free time playing golf, spending time with his family, tending to his lawn, and smoking meat. He works hard for his income and is looking forward to building a future with his family. He helps run and fundraise for the Villages 5k run every three months and participates in many events held by the community or Isabella's school.

## PHYSICAL HEALTH AND MEDICAL HISTORY

Mr. Pesserillo denied a significant medical history including illness, disease, hospitalization, and surgery. He reported a dental bridge that needs to be repaired, as it continues to fall out.

## ALCOHOL AND SUBSTANCE ABUSE HISTORY

Mr. Pesserillo denied a problematic history of substance use, including use of marijuana, opiates, benzodiazepines, hallucinogens, or amphetamines, and denied problematic use of alcohol, noting he consumes beer socially. He first tried alcohol during adolescence and marijuana in college, with no continued use. He has no history of substance use treatment.

## MENTAL HEALTH HISTORY

Mr. Pesserillo denied symptoms consistent with all mental disorders, including depression, anxiety, or other mood disorders, and denied symptoms consistent with mania, paranoia, hallucinations, or delusions. He reported difficulty concentrating in college from 2004-2008 and was diagnosed with ADHD and prescribed Adderall. He stopped taking medication upon graduation and has not been under the care of a mental health practitioner since. He denied the presence of symptoms or impairment. His mother, Mrs. Pesserillo, reported he had test anxiety in college and used medication until he graduated college, when he no longer needed the substance. He has admitted since the arresting incident, and as his sentencing date approaches, he has experienced increased stress and anxiety. He reported it has become increasingly difficult to focus on and at work, and has noticed his frustration tolerance is lower. There have been no incidents of aggression or impulsiveness in the home or at work. He denied any instance of manic behavior, reckless driving, or frivolous spending. He denies difficulty with sleep and described his appetite as average.

## LEGAL HISTORY

Mr. Pesserillo has no history of prior criminal involvement.

## COLLATERAL INTERVIEW WITH NATALIE SCOTT

Ms. Natalie Scott is the fiancé of Mr. Pesserillo. She reported she began working at Massey Services Inc in 2020 and met Mr. Pesserillo in 2022, when she was his trainer for the new position. She reported they began a friendship, started dating, and broke off the relationship. Approximately 1.5 years ago, she reported undergoing several medical issues, which resulted in her inability to have additional children. Mr. Pesserillo was there to support her and comfort her every step of the way, and the pair rekindled their relationship.

As a person, Ms. Scott described Mr. Pesserillo as a man who is always worried about others, and as a man who will go out of his way to ensure others are okay, including his customers. As a son, Ms. Scott reported that Mr. Pesserillo maintains a strong relationship with his parents and is an integral part of their lives. She reported he is a big support and help to them, with medical appointments, daily activities, projects around the home, and preparing meals. As a partner, Ms. Scott described Mr. Pesserillo as loving and as someone who provides reassurance and shows appreciation. She reported they enjoy spending time together and cooking meals together. As a stepfather, Ms. Scott described Mr. Pesserillo as patient and a strong role model. She reported that Isabella's biological father is not present in her life and has built a slow, steady, and strong relationship with Mr. Pesserillo, referring to him as "dad." She reported they began their relationship as friends and started small, where he would not correct her or give her directions. Over time, he has become a role model, helping her with homework, teaching her how to fold her clothes, wrestling and watching wrestling together, playing at the park together, going to the gym together, and even going on outdoor runs together.

Should Mr. Pesserillo face a period of incarceration, Ms. Scott detailed the hardships she and the family would face. First and foremost, she would lose a partner, which would be "life

11

crushing." She reported they are building and living their lives together and also work together, so she would not only lose a partner and friend, but also a colleague. Isabella would lose the only father that she knows, the one who tucks her into bed every night. Financially, Ms. Scott would suffer tremendously. Her residence that she rents is being sold soon and she will not be able to sustain the house they live in together on her own. She reported that Mr. Pesserillo pays the mortgage, car insurance, electric bill, one half of the grocery bill as well as fees associated with their daughter's activities and village events. Ms. Scott explained that "everyone makes mistakes, and this is not who Mr. Pesserillo is as a person." She expressed he is a "great guy" who "gets along with anyone he meets," who maintains "a very strong work ethic" and "strives to do the best he can in all aspects of his life."

## COLLATERAL INTERVIEW WITH MARY PESSERILLO

Mrs. Mary Pesserillo is the mother to Mr. Pesserillo, who throughout the duration of her collateral interview highlighted and expanded upon their family's close-knit nature and relationships that have withstood time and generations. Mrs. Pesserillo is one of six brothers and sisters that she shared extremely close relationships with. She reported as she and her siblings began having children, their children became the best of friends. She explained that family was always the foundation and at the core of her life, spending weekends, after school hours, vacations, and holidays together. Mrs. Pesserillo's brother, Billy, is the father to Jason and her brother Eddie is the father to Patrick and Chris, all of whom Mr. Pesserillo grew up with. Jason moved to Florida with his family during childhood, but Patrick and Chris lived locally. Despite living 30 minutes apart, Mrs. Pesserillo and her brother shared the responsibility of driving the boys back and forth to one another's houses, ensuring they always had time to play games, spend

12

time with friends, and engage in sports together. She expressed they were "best friends" and like "brothers, not cousins." She expressed they maintained their closeness past high school and into college, where they all remained local. When Mr. Pesserillo was 24 years of age, the family learned that Chris had unexpectedly passed away in his sleep. Though Chris struggled with mental health issues, the family to this day is uncertain of his cause of death. This proved to be a trying time for the family, however their close family foundation allowed them to support one another, grieve together, and honor his memory yearly by attending a Mets game together where Chris has a memorial brick.

In 2012, Mr. Pesserillo relocated to Florida to be closer to his parents while he was in between jobs. His mother learned that her nephew Jason had started his own business and encouraged Mr. Pesserillo to work with him. He reconnected with his cousin, and they immediately became close again, as if no time had passed. Mr. Pesserillo relocated to South Florida, resided with his cousin's girlfriend's sister, before purchasing his own condo and began working with Jason. Mrs. Pesserillo reported over time her son would often call home worried about Jason's health. She reported he was always sick and depended on Mr. Pesserillo professionally and personally. Mr. Pesserillo often took his cousin to medical appointments, encouraged him to keep medical appointments, opened the office on the days that his cousin did not come to work, ran his personal errands, shopped for him, and delivered him food. He was never bullied or pressured into doing these things, rather, Mr. Pesserillo had developed a strong and close bond with his cousin, and genuinely concerned and worried for him, did what he was able to support him, maintaining his loyalty to the familial bond. Mrs. Pesserillo explained that her son's aunt Susan would call him, to encourage him to maintain the business while her son was ill, leaving a message the day he left expressing her disappointment and anger towards him.

13

Mr. Pesserillo never amassed any financial gain from his involvement, rather, was driven by familial ties and the notion of family and closeness to remain loyal and supportive.

Mrs. Pesserillo additionally commented on her son's integral role in his parent's lives. His father suffers from macular degeneration, is blind in one eye, and has significant deterioration in the other eye. He is no longer able to drive and relies on Mr. Pesserillo for many tasks both in and out of the home. Mrs. Pesserillo reported her son stops by their home every day after work to help around the home, changing lightbulbs, retrieving items that would otherwise require a step ladder, taking care of their lawn, and completing projects in the home. He additionally drives his parents to medical appointments and takes his father to play golf with him every Saturday, despite his inability to play. Mrs. Pesserillo expressed that not only is her son integral in their day-to-day care, but it is a critical component of their social and emotional health.

Mrs. Pesserillo exclaimed that her son does not have one mean bone in his body and will do anything for the people he loves. She gave an example several years ago while she and his father were in New Orleans, they were mugged, and his father was injured. Mrs. Pesserillo called her son from the hospital to say they were okay, and he did not need to travel there. However, Mr. Pesserillo showed up, without telling his parents, to support them and be there for them.

Mrs. Pesserillo described how, no matter the age and no matter the distance between all family members, they remain in communication regularly, spend holidays together, travel to see one another, and participate in annual family reunions, with 38 family members. She continued to reiterate that for the duration of her son's life, all he has known is family, the importance of family, and the closeness of family.

## ASSESSMENT OF CHARACTER

Mr. Pesserillo is a man of upstanding character and values. Character reference letters obtained, reviewed and summarized below reflect a man who "has a great work ethic" and who "has never been in trouble with the law." His sister described he "has a heart of gold and would never hurt anyone intentionally." She commented on their strong family values and his commitment to helping their family, especially their parents, taking them to appointments, spending time together, and cooking Sunday dinners. She reflected on the close-knit nature of his group of friends, including his cousins, who have been of great value to him. She commented that her brother is always willing to lend a helping hand and treats friends as if they were family. His fiancé commented on her immediate recognition of his dedication to work and his customers, and the way he cares for each customer and job, which has won him many awards and accolades. She expressed when they began dating, he was always "kind, respectful, and honest." She described him as a "great man," who is "patient and caring" and who has taken on the role of father to her daughter, willingly, and lovingly.

Mr. Pesserillo's brother-in-law characterized him as "friendly, full of energy" and someone with "a sweet disposition," personality characteristics he has maintained since childhood. As an adult, he commented he is "hardworking, outgoing, and personable." His aunt and uncle reflected on watching Mr. Pesserillo grow up to be a "kind and caring" man, who is "honest and friendly," who "has a good heart and cared about family and friends." Together they have shared in loss, with Mr. Pesserillo supporting them every step of the way after their son Chris unexpectedly passed away. They commented on his genuine relationships with his customers and the care he has for each one, and the commitment he displays to his parents. His family friend described him as a "person of strong character and integrity" and a "person of

15

strong moral principles," who consistently demonstrates "kindness, compassion, and a genuine concern for the well-being of others."

It is clear that the common theme regarding Mr. Pesserillo is his good-hearted and caring nature and his lack of criminal involvement. Additionally, each person close to him reflected on his remorse and ability to take responsibility for his actions.

## CLINICAL ASSESSMENT

Mr. Pesserillo is a 38-year-old single, Caucasian male. He presented in session as well-groomed, made good eye contact throughout the interview, and was polite and engaged in session. Speech was normal in tone, pitch and volume and appropriate to his mood, which was appropriate to his affect. No abnormal movements were noted, and psychomotor behaviors were within normal limits. His memory, insight and judgment appeared intact. Levels of attention and concentration were within normal limits. Thought patterns and content were consistent with reality and there is no evidence of a thought disorder. He denied any past or present high-risk factors including homicidality, suicidality, or psychosis.

Mr. Pesserillo is a 38-year-old blue-collar worker, who is charged for the first time with a federal crime. He has no known history of legal involvement, mental illness, abuse, or substance use disorder. He was raised in a stable and supportive environment by two loving parents, contributing to the development of strong family foundations during his childhood. His lack of prior criminal history suggests that this offense may be an isolated incident rather than indicative of a broader pattern of criminal behavior. Additionally, his supportive family background and stable upbringing contribute to the understanding that he has been raised in an environment conducive to positive development and decision-making. There is no indication of mental health

16

or substance use issues, which further reduces concerns about any underlying psychological or addiction-related factors influencing his actions. Although Mr. Pesserillo did not amass any financial gain nor appear to have experienced financial pressures or significant external stressors that might typically contribute to criminal behavior, it is possible that situational factors played a role in his involvement. His collaboration with his cousin at the time of the offense suggests the potential influence of peer involvement or relational dynamics, which may have led to poor decision-making or a lapse in judgment, especially given the strong family dynamics and values he was raised with. While there is no indication of persistent underlying issues or motivations, the situational context may have played a role in his decision to engage in criminal activity. Based on the available information, Mr. Pesserillo does not present any notable psychological or behavioral conditions that would suggest underlying factors contributing to his offense. His history reflects a stable and functional lifestyle, with no significant concerns regarding his mental health or social background, further supporting the view that his offense may be an isolated incident rather than a symptom of deeper, ongoing issues.

Since the arresting incident, he has demonstrated the ability to increase insight and judgment, level of awareness and skill level. He has obtained new employment with Massey Services, where he remains the number one sales agent in the Villages, Florida. He remains compliant with all financial obligations in his life and continues to adapt to his circumstances and has not allowed a traumatic event to interfere with his responsibilities as an upstanding citizen of his community.

Mr. Pesserillo currently displays no symptoms of substance use, impactful mood or personality disorder. He continues to maintain appropriate relationships with friends and family and any current symptoms of anxiety may be the result of his impending charges and the

17

unknown future that he holds. Attending individual mental health counseling sessions will help to improve his overall well-being, process his experiences, and build a set of healthy coping skills to assist him in managing stressors and vulnerabilities in the future. Mr. Pesserillo appears to be a high-functioning, hardworking and responsible individual. He has taken accountability for his actions and the previous mistakes he has made and continues to learn from his experiences to avoid future mistakes. His primary focus continues to be and has always been providing for his family. This series of events is unlikely to happen again, especially since Mr. Pesserillo is able to understand the consequences of his actions.

## POST CONVICTION RISK ASSESSMENT

The Federal Post Conviction Risk Assessment (PCRA) is a scientifically based instrument developed by the Administration Office of the United States Courts. The purpose of the PCRA is to improve the efficacy of post-conviction supervision. The PCRA evaluates the risks and needs of each person on community supervision. The risk evaluation determines the intensity of treatment and services necessary to protect public safety. The PCRA assessment helps community supervision departments determine the nature of the person, family, or social interventions an offender needs to avoid recidivism. The PCRA includes 25 scored items and 38 unscored items that can be grouped into 7 categories: criminal history, education/employment, substance abuse, social networks, cognitions, violence assessment, and responsivity factors.[1] Each of these factors indicates that Mr. Pesserillo has the lowest possible risk of recidivism.

The PCRA considers 6 factors related to criminal history: (1) the number of prior misdemeanor and felony arrests; (2) whether there are prior violent offenses; (3) whether there is

[1] Administrative Office of the United States Courts (June 2018). An overview of the federal post-conviction risk assessment. Retrieved from https://www.uscourts.gov/sites/default/files/overview_of_the_post_conviction_risk_assessment_0.pdf

a varied (more than one offense type) offending pattern; (4) whether there has been new criminal behavior or violations while under supervision; (5) whether there has been problematic institutional adjustment while imprisoned; and (6) the person's age at the time of the assessment.[2] Mr. Pesserillo has never been involved in the criminal justice system in the past and this marks his first arrest. He has not displayed any issues throughout any legal proceeding thus far and he has no history of non-compliance, which serves as one of the strongest predictors of re-offending while on probation.

The education and employment domain includes measures for: (1) the highest education level achieved; (2) employment status; and (3) work history and stability over the past 12 months. Mr. Pesserillo holds a bachelor's degree from SUNY Albany and has been gainfully employed since graduation. He is presently a property inspector for Massey Services, where he is the number one sales agent in all of the Villages, Florida. Educational or vocational problems are strong predictors of re-offending and Mr. Pesserillo has no such problems.

Drug and alcohol use is measured by: (1) whether there are disruptions at work, school, and home due to drug or alcohol use; (2) whether the person uses drugs or alcohol when it is physically hazardous; (3) whether the person continues to use drugs or alcohol despite social and interpersonal problems; and (4) whether a current drug or alcohol problem exists.[3] Mr. Pesserillo has no substance use or alcohol issues. He does not use drugs and does not consume alcohol on a regular basis.

Under the social networks category, the factors assessed include: (1) marital status; (2) relationship status with a significant other; (3) whether there is an unstable family situation; (4) the nature of the person's relationship with peers; and (5) whether the person lacks positive

---

[2] Ibid.

[3] Ibid.

prosocial support.[4] Mr. Pesserillo has been involved in a relationship with his fiancé for the past three years and together they are raising her daughter, Isabella. He benefits from family support and has maintained strong relationships with not only the immediate family, but extended family, and friends he has had since childhood. He does not lack social support, and he does not engage with criminally driven or negative peers. Criminal associates are a strong predictor of re-arrest while on probation, which Mr. Pesserillo does not possess.

Turning to the cognitions domain, person's attitude toward supervision and change is assessed. The person under supervision also completes an 80-question self-assessment, which is discussed further below. The violence risk assessment includes the following factors: (1) whether the instant offense includes general violence, domestic violence, any type of sex offense, or failure to register as a sex offender; (2) the person's age at first contact with the criminal justice system; (3) whether the person has prior arrests for general violent criminal conduct, domestic violence, sexual assault, stalking, menacing, harassing, or threatening, or arrests for violating a restraining or personal protection order; (4) whether there is evidence that the person has pre-planned past violent criminal conduct; (5) whether the person has used a weapon in the commission of a crime; (6) whether the person has victimized a stranger during past violent conduct; (7) whether there are previous sexual assaults of unrelated male victims under the age of 17; (8) whether the person is a gang member or affiliated with a gang; (9) whether the person experienced a breakup with a significant other in the six months preceding the assessment; (10) whether there is a history of polysubstance abuse; (11) whether the person has been prescribed psychotropic medication at the time of sentencing, while incarcerated, or at the time of the assessment; (12) whether the person had been admitted to a hospital or psychiatric institution for

---

[4] Ibid.

mental health reasons; and (13) whether the person has been noncompliant with treatment in the six months preceding the assessment.[5] Mr. Pesserillo does not meet criteria for any of the above 13 listed factors, indicating the lowest level of risk for recidivism.

Finally, for the responsivity factors domain, factors assessed include: (1) low intelligence; (2) physical handicap; (3) reading and writing limitations; (4) mental health issues; (5) no desire to change/participate in programs; (6) homelessness; (7) transportation; (8) child care; (9) language; (10) ethnic or cultural barriers; (11) history of abuse/neglect; and (12) interpersonal anxiety.[6] Mr. Pesserillo does not meet criteria for any of the 12 listed factors, indicating the lowest level of risk for recidivism.

The Self-Assessment section of the PCRA 2.0 is based on the Psychological Inventory of Criminal Thinking Styles (PICTS), which was developed by Glenn Walters, Ph.D. The PICTS is a quantifiable instrument that provides a reliable and valid method to assess thinking styles. It is an 80-item self-report measure of thinking styles created to provide clinicians and criminal justice professionals with information about how a person thinks, which can be valuable for treatment and supervision purposes. It is designed to assess the following seven thinking styles hypothesized to support and maintain criminal activity: Mollification, cutoff, entitlement, power orientation, superoptimism, cognitive intolerance, and discontinuity.[7] Mr. Pesserillo does not project blame for his present criminal conduct onto external factors. He has taken accountability and responsibility for his actions. Mr. Pesserillo demonstrates patience, tolerance, and emotional control and does not display impulsive thinking. He acts in a manner that is consistent in his belief that he is helping others. Mr. Pesserillo does not possess a sense of ownership, privilege, or uniqueness that grants him personal permission to violate laws or the rights of others. He has

---

[5] Ibid.

[6] Ibid.

[7] Ibid.

admitted to making a mistake and acting in a manner outside the law. Mr. Pesserillo does not attempt to exert control over the external environment at the expense of his personal or internal control. He does not put others down to feel better about himself. Mr. Pesserillo does not believe that he will avoid the negative consequences of his actions, nor does he take shortcuts or look for the easy way around problems. Mr. Pesserillo additionally continues to move forward in his life and has not lost sight of his goals, nor is he easily sidetracked by environmental events.

## SENTENCING RECOMMENDATIONS

It is evident that Mr. Pesserillo has built a solid foundation of prosocial attitudes and personality, is surrounded by a positive social environment, maintains strong family ties and community support, and lacks the risk factors most strongly associated with re-offending. For these reasons, it is our professional opinion that Mr. Pesserillo receives leniency, and a sentence that does not include a period of incarceration. We do not intend on negating the behavior that led to his arrest but respectfully request that the Court and the United States Attorney's Office consider the existing mitigating factors and lowest risk for recidivism and acknowledge that a sentence including a period of incarceration is not intended for an individual like Mr. Pesserillo.

Based on our clinical experience and working with the offender population, it is our conclusion that from a forensic standpoint, Mr. Pesserillo would benefit from a tailored approach focused on maintaining his positive personal and social foundations while addressing the situational factors that may have contributed to his criminal behavior. Given his lack of prior criminal history and stable upbringing, it is likely that this offense is an isolated incident. As such, the treatment recommendations should emphasize cognitive behavior therapy to address any cognitive distortions or decision-making processes that led to the offense, with a goal to help

22

him develop healthier coping strategies, enhance problem-solving skills, and reduce the likelihood of any future impulsive or risky decisions.

In the case of Mr. Pesserillo, we believe probation supervision would likely be a more appropriate and beneficial alternative to incarceration. Mr. Pesserillo has a strong family foundation, which could be a significant protective factor in his rehabilitation. Probation would allow him to remain with his family, where he can continue to receive emotional and practical support and where he can continue to support his own family, financially and emotioonally. Incarceration, on the other hand, could disrupt these relationships and reduce the support system he needs to successfully reintegrate into society. Mr. Pesserillo is employed and has a history of maintaining stable work. Probation would allow him to continue his job, ensuring that he does not lose his livelihood, which could increase the risk of reoffending due to financial strain or a lack of purpose. Incarceration would likely disrupt his employment and could make it more challenging for him to find stable work post-release. Probation provides the opportunity for Mr. Pesserillo to engage in rehabilitation programs and community service. These programs could better address the underlying causes of his offense and provide him with the tools needed to make better decisions in the future. Incarceration may limit these opportunities for rehabilitation and would not allow for individualized treatment in the same way that probation can. Research suggests that individuals who remain in the community under probation supervision, as opposed to those who are incarcerated, tend to have lower rates of recidivism. With the right supervision, Mr. Pesserillo would be able to demonstrate accountability for his actions while receiving the support he needs to avoid reoffending.

If Mr. Pesserillo were to be convicted and sentenced to a period of incarceration, it would dramatically affect his quality of life and others who depend on him for emotional and

economic support, namely his fiancé and parents. Mr. Pesserillo is a hardworking individual and his growing family relies on a two-income household. Additionally, his parents are aging, and his father's health is compromised. He is an integral member of his care team and he would be negatively impacted should he not be available to care for his father. It will be essential for him to remain in the community and serve as a productive member of society in addition to providing for his family.

It is important to emphasize that the contents of this report are not intended to minimize the seriousness of the matter. The Consulting Project would like to thank the Court and United States Attorney's Office for its review and consideration of the contents in this memorandum and is hopeful that the Court will concur with our recommendation.

Respectfully Submitted,

Mandi Budah, MA, LCSW
Forensic Social Work Consultant

Reynaldo Cusicanqui, B.A.
Forensic Mitigation Specialist
CONSULTING PROJECT